715 P.2d 366

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Donald SAPP and Marsha Carpenter, Defendants-Respondents.**

No. 15802.

Court of Appeals of Idaho.

Feb. 13, 1986.

Petition for Review Denied April 18, 1986.

Jim Jones, Atty. Gen., by Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-appellant.

Jeffrey A. Child, Coeur d'Alene, for defendants-respondents.

WALTERS, Chief Justice.

This case concerns the adequacy of the description of a place to be searched pursuant to a search warrant. Armed with a warrant, police searched the residence and property of Donald Sapp and Marsha Car-

penter and found marijuana in the house and yard. During the search the officers found a hole in the backyard of the residence leading to an underground tunnel. The police obtained a second warrant and searched the tunnel which led to an underground greenhouse. As a result of evidence obtained in these two searches, Donald Sapp was charged with manufacturing marijuana, and Marsha Carpenter was charged with possession of marijuana. During pretrial motions, the district judge ordered suppression of the evidence obtained pursuant to the first warrant because, in the judge's view, the warrant did not specifically describe the area to be searched. The evidence discovered pursuant to the second warrant was also suppressed because probable cause for the second warrant was developed as a result of the first search. Since all the evidence supporting the charges against Carpenter was suppressed, the judge also ordered that the charges against Marsha Carpenter be dismissed. Charges against Sapp were not dismissed, although the evidence resulting from the searches was suppressed. The state appeals, challenging the order suppressing the evidence and the order dismissing charges against Carpenter. We reverse.

The warrants were issued, and the searches conducted, under the following circumstances. An anonymous tipster sent a letter to the Idaho Drug Enforcement Administration indicating that the defendant Sapp was growing marijuana and that he had boasted in public of having an undetectable greenhouse behind his home. Officers went to the house Sapp shared with Carpenter to corroborate part of the information in the letter. Through a window officers were able to observe marijuana growing inside the defendants' double-wide mobile home. Utilizing this information and a county tax assessor's record of the legal description of Sapp's property, officers obtained a warrant and began a search of the residence. While checking the yard around the home, the police discovered a pile of boards which were covering a hole in the ground behind the house. An elec-

trical wire went into the hole. Rather than immediately searching the hole, one of the officers returned to court and obtained another warrant to search this specific area. The "hole" turned out to be a fifteen-foot tunnel leading to an eight by ten-foot room with an eight to ten-foot ceiling equipped with grow lights. Several marijuana plants were discovered growing in the room. Marijuana was also discovered in the house and growing in the yard behind the house. As a result of these discoveries, Sapp and Carpenter were arrested.

The property in the search warrant was identified as:

*premises* ... described as follows: Located at Rt. 1, Box 121–0, Athol, Idaho; Legal description—Holiday Ranch Estates, Lot 4, Block 2, Section 22, Township 53 N, Range 4 West. See attached verbatim for directions.

The "attached verbatim" further described the property by giving the following directions:

Travel north on Highway 41 through Rathdrum and past Twin Lakes to Seasons Road. Turn east onto seasons [sic] road and travel approximately 1.9 miles passing a tree farm which is on the south side of the road. Turn north on a gravel road and continue approximately ¾ mile then turn west on to a gravel road. Travel approximatley [sic] .15 mile to driveway on north side of road. This drive is just west of a utility pole of [sic] which is a transformer displaying the numbers 5856. Turn north onto this driveway. The Sapp residence is approximately 200 feet off the roadway.

These directions were obtained when the officers drove to the property prior to obtaining the warrant.

The thrust of the defendants' argument and the district judge's reasoning supporting suppression is that the description of the property to be searched was not sufficiently specific and the warrant was, correspondingly, too general. The basis for requiring particularity in a description of the place to be searched stems from the fourth

amendment to the Constitution of the United States, art. 1, § 17 of the Idaho Constitution, and I.C.R. 41. *See State v. Carlson,* 101 Idaho 598, 599, 618 P.2d 776, 777 (1980). The applicable test for judging the sufficiency of the description is

whether "the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." [Citations omitted.] This Court has expanded on this test: "The description must be sufficiently clear so that the property to be searched is recognizable from other neighboring properties." *State v. Yoder,* 96 Idaho 651 at 653, 534 P.2d 771 at 773 (1975).

*Id.* Additionally, the warrant is to be interpreted in a "commonsense and realistic fashion." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *State v. Holman,* 109 Idaho 382, 707 P.2d 493 (Ct.App.1985); *State v. O'Campo,* 103 Idaho 62, 65, 644 P.2d 985, 988 (Ct.App.1982). We conclude that the description of the property in the first warrant was sufficiently particular to meet this test and the district judge erred in suppressing the evidence discovered under the warrant.

■ The district judge found that the description of the land failed to give the meridian to which the Township, Range, and Section numbers referred, and that the county where the land was located was not mentioned. The judge concluded that, based on *Yoder,* "[a] police officer with no actual knowledge of the case could not reasonably be expected to locate the area to be searched." *Yoder* does not require that the description be so specific that an officer with *no actual knowledge* could reasonably locate the property. To the contrary, the fact that the same officers who applied for the warrant are the same officers who execute it is a factor to be taken into consideration when evaluating the description. *United States v. Turner,* 770 F.2d 1508 (9th Cir.1985); *State v. Hart,* 100 Idaho 137, 594 P.2d 647 (1979). The purpose of the description is to allow the executing officers to ascertain and identify the property to be searched and to distinguish the intended property from neighboring property. Obviously, if the same officers are involved in obtaining and executing the warrant, these objectives are more likely to be met. That is precisely what occurred here. Thus, the possibility that neighboring properties would be mistakenly searched or that the officers executing the warrant would not be able to locate the property was significantly reduced. Likewise, to invalidate the warrant in this case because no county or meridian was listed would be to fall victim to the hypertechnical interpretation warned against in *Ventresca.*

■ The district court also indicated considerable concern over the use of the word "premises" in the description of the property. The court felt that such a description was not specific enough to describe the scope of the search. The district judge noted that he could not determine whether the warrant authorized a search of the residence, and that no mention was made in the warrant of the greenhouse or other structures on the land. We again conclude that the district judge was hypertechnical in his interpretation of the warrant. The directions included in the warrant specifically noted the residence. Thus the warrant clearly included a search of the residence.

As to the use of "premises," the district court held that the word does not have one fixed and definite meaning, but rather must be interpreted in light of the context and circumstances in which it is used. We agree. In the context and circumstances of this case, the use of "premises" was acceptable. First, we note that premises was included as a part of a "form" search warrant. Care must be taken to insure that pre-printed forms, which must by their very nature contain some common language, comply with the constitutional mandates of specificity in the description of the property. *See People v. Muniz,* 198 Colo. 194, 597 P.2d 580 (1979). Here, the form contained the words "at the premises/in a vehicle." The words "in a vehicle" had

been crossed out to indicate that the search was to be "of premises" as opposed to a search "of a vehicle." Next, the form required that a more specific description of the premises be given. Thus, a legal description was used. It is true that the mobile home and the surrounding buildings could have been more completely described. However, a meticulous and thoroughly detailed description is not required.

The district court in its memorandum decision cited the case of *Rignall v. State*, 134 Miss. 169, 98 So. 444 (1923) as support for its holding that the word "premises" alone was not a permissibly particular description. In *Rignall*, the total description of the property was "the premises of Joe Rignall." We would agree with the district court that such a description without more is not acceptable. However, *Rignall* is readily distinguishable from the present case. Here, there was additional wording which did describe the property which was to be subjected to the search.

■ We also note that other courts have determined that a search of "premises" includes the land, the buildings, and other appurtenances which could be considered a part of them. *State v. Caldwell*, 20 Ariz. App. 331, 512 P.2d 863 (1973); *Gumina v. State*, 166 Ga.App. 592, 305 S.E.2d 37 (1983); *State v. Trujillo*, 95 N.M. 535, 624 P.2d 44 (N.M.1981). Although a "greenhouse" was not specifically mentioned in the first warrant, we conclude that a full search of the "premises" would have included within its scope a search of the land where the "greenhouse" was found. The letter informing the police of the illegal activities described a "fool proof greenhouse" behind the trailer. The transcripts of the probable cause hearings for the warrants reveal that the magistrate who issued the warrant for a search of the "premises" was made aware of the information about a "fool proof greenhouse." Thus, there can be no question but that the greenhouse was to be searched. The second warrant was obtained by the officers because the hole in the ground was not the type of "greenhouse" they were expecting to find.

The officers' actions in obtaining the second search warrant, while probably not necessary, indicates that the officers were pursuing their search with an awareness of constitutional considerations. The officers testified that they were unsure about the propriety of searching the hole in the ground because they had never before confronted such a situation. Since they had time to secure another warrant, it was not imprudent to obtain the second warrant. That type of action is to be commended, not criticized.

We conclude that the first warrant in this case did meet constitutional standards for particularity in describing the place to be searched. Accordingly, the second warrant was also valid. The order suppressing the evidence obtained pursuant to the warrants and dismissing the charges against Carpenter is reversed. Case remanded.

BURNETT and SWANSTROM, JJ., concur.