982 P.2d 961

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Thomas Edward SCHAFFER, Defendant–Appellant.**

**Nos. 24375.**

Court of Appeals of Idaho.

June 30, 1999.

Nevin, Herzfeld & Benjamin, Boise, for appellant. David Z. Nevin argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

Thomas E. Schaffer challenges a district court order denying his motion to suppress evidence. Because we conclude that the suppression motion should have been granted, we reverse.

## I.

## BACKGROUND

Agent Lusk of the Idaho Department of Law Enforcement was told by an informant that three men were manufacturing methamphetamine in Nampa. One of the men named by the informant was subsequently arrested in Owyhee County in connection with the discovery of a methamphetamine lab. This person informed Lusk that two other men, Ivan and Tom, were manufacturing methamphetamine at a specific address in Fruitland. He told Lusk that Tom lived in a transit bus on the property at that address and that the property was owned by Tom's parents. He said that the methamphetamine was manufactured in a cargo truck at the same location.

Agent Lusk learned from local police that Thomas Schaffer lived at the Fruitland address given by the informant. Another law enforcement agent surveilled the property and confirmed that a bus and a cargo van were on the property behind two houses, as the informant had reported. It was later established that one of the homes was owned by Schaffer's parents and that a Mr. Wayne occupied and held a life estate in the other home as well as two large sheds that were located approximately twenty-five feet behind his house.

Based on this information, the officers obtained a search warrant authorizing the search of "[a]n all white cargo truck and a white with yellowish primer color transit bus located in the back yard of a residence ...." at the address in Fruitland. The search warrant further stated that "The affiant is not requesting to search the house, only the cargo truck and transit bus located in the back yard of the house."

Before execution of the search warrant, Agent Rankin of the Department of Law Enforcement surveilled the property from about 2:30 p.m. until about 5:44 p.m. During the surveillance, he observed a man, later identified as Schaffer's nephew, Johnny Schaffer, moving in the backyard. He saw Johnny Schaffer walk from the vicinity of the transit bus approximately ninety feet to the east, where the two sheds were located. The cargo truck that was the subject of the search warrant was located about ten or twenty feet to the north of the sheds. From his vantage point, Rankin could not see whether Johnny Schaffer entered the sheds, but did see him reappear carrying something in his hand. Rankin later saw Johnny Schaffer leave the property in a pickup truck minutes before the search warrant was executed.

Officers began conducting the search at approximately 5:45 p.m., while it was still light, with about ten officers participating. While some of the officers were assigned to secure the area around the bus, three others, including Agent Duggan, were assigned to secure the areas around the cargo truck. Agent Duggan circled the truck and did not detect anyone inside. He then entered one of the two nearby sheds to see if anyone was inside. Duggan pulled back a tarp that covered a "door-like structure," entered, and walked to the far end of the forty-seven foot shed. About halfway to the end, he noticed a chemical smell. He then entered a walled-off area and observed a white container of muriatic acid and other items he associated with methamphetamine manufacturing. Duggan left the shed and about fifteen minutes later notified Agent Lusk, a specialist in methamphetamine labs, of his find. Duggan asked Lusk to enter the shed to confirm that the odor was indicative of chemicals used in making methamphetamine. Lusk did so and agreed with Duggan's opinion regarding the chemical odor.

Lusk then went to the same magistrate who had issued the first warrant and obtained a search warrant for the shed based upon his and Duggan's observations there. When the second warrant was executed, officers seized from the shed five glass containers of various liquids.

Schaffer was charged with manufacturing a controlled substance, I.C. § 37–2732(a)(1)(A). He filed a motion to suppress all evidence acquired through the officers' warrantless entries of the shed and through execution of the second warrant. He asserted that this evidence was obtained through violations of state and federal constitutional prohibitions against unreasonable searches and seizures.

■ After conducting an evidentiary hearing[1] the district court ruled that the initial

1. Before the hearing, defense counsel filed a motion requesting that the district court take judicial notice of certain testimony given in the suppression hearing conducted in a companion case against Schaffer's nephew, Johnny Schaffer. This motion was granted. A transcript of the hearing in the Johnny Schaffer case was not prepared, but the same judge had presided in that hearing and apparently relied upon his rec-

ollection of the testimony. We do not endorse this procedure; if evidence given in a separate proceeding is considered by a trial court, a transcript of such testimony should be prepared and made a part of the record in the case that is then before the court. However, because the district judge here did rely upon the evidence he had heard in the Johnny Schaffer case, we have authorized augmentation of our appellate record to

warrantless entry of the shed by Duggan was a constitutionally permissible protective sweep and that Lusk's subsequent entry was justified for officer safety reasons. The court held, alternatively, that even if Lusk's entry was unlawful, probable cause still existed for the second warrant based solely upon Duggan's observations during the first entry.

After the denial of his suppression motion, Schaffer pleaded guilty to a reduced charge of possession of a controlled substance, I.C. § 37–2732(c)(1). In the written plea agreement, he reserved the right to appeal the district court's denial of his suppression motion. The agreement also provided that if Schaffer prevailed on appeal, he would be allowed to withdraw his guilty plea.[2]

## II.

## ANALYSIS

### A. Standard of Review

In evaluating a ruling on a motion to suppress, we defer to factual findings of the trial court unless they are clearly erroneous, but we freely review the trial court's determination as to whether constitutional standards have been satisfied in light of the facts found. *State v. Morris*, 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct.App.1998); *State v. Pick*, 124 Idaho 601, 603, 861 P.2d 1266, 1268 (Ct.App.1993); *State v. Heinen*, 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct.App.1988). The reasonableness of a search or seizure is a question of law requiring our independent review. *Morris, supra; State v. McIntee*, 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct. App.1993); *Heinen*, 114 Idaho at 658, 759 P.2d at 949.

### B. The Warrantless Entry of the Shed Does Not Fall Within the Protective Sweep Exception to the Warrant Requirement

The guarantees against unreasonable searches and seizures found in the

Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho Constitution are implicated when the police search premises in which the defendant has a reasonable expectation of privacy. *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *State v. Thompson*, 114 Idaho 746, 749, 760 P.2d 1162, 1165 (1988); *State v. Holman*, 109 Idaho 382, 385, 707 P.2d 493, 496 (Ct.App.1985). Warrantless searches or seizures are presumptively unreasonable, and therefore illegal, unless they come within one of several judicially recognized exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–2032, 29 L.Ed.2d 564, 575–576 (1971); *State v. Vega*, 110 Idaho 685, 687, 718 P.2d 598, 600 (Ct.App.1986); *State v. Cook*, 106 Idaho 209, 214, 677 P.2d 522, 527 (Ct.App.1984).

Preliminarily, we note that a question was raised below and addressed by the district court regarding whether Schaffer possessed the requisite privacy interest to challenge the search of the shed. The evidence showed that the sheds were under the control of Mr. Wayne, who held a life estate in the sheds and the land on which they were located. Wayne used the sheds for storage purposes, and with his acquiescence, the sheds were also used for storage by Schaffer, three members of Schaffer's family, and another individual. The district court concluded that Schaffer had no reasonable expectation of privacy in the sheds under a Fourth Amendment analysis but that he did possess such a privacy interest under the Idaho Constitution, citing *State v. Cada*, 129 Idaho 224, 923 P.2d 469 (Ct.App.1996). On appeal, the State has not contested the district court's conclusion that Schaffer possessed a protected privacy interest under the Idaho Constitution. Therefore, we will conduct our appellate re-

---

include a transcript of the suppression hearing in that case, and we have considered it in rendering our decision.

**2.** The State erroneously asserts that the issues presented in this appeal are moot because the items of evidence Schaffer sought to have suppressed relate only to the manufacturing charge, not to the possession charge to which he pleaded

guilty. According to the State, because Schaffer has been convicted of possession only, suppression of the evidence would have no impact on the judgment of conviction. However, given the plea agreement provision that Schaffer may withdraw his guilty plea in the event that he prevails on appeal, the appeal is plainly not moot.

view based upon Article I, § 17 of the Idaho Constitution,[3] and we need not address the district court's conclusion that Schaffer lacked a reasonable expectation of privacy under Fourth Amendment standards.

We are not required to follow United States Supreme Court precedent in interpreting Article I, § 17. *See State v. Guzman*, 122 Idaho 981, 988, 842 P.2d 660, 667 (1992); *State v. Thompson*, 114 Idaho 746, 748, 760 P.2d 1162, 1164 (1988); *State v. Newman*, 108 Idaho 5, 10, n. 6, 696 P.2d 856, 861, n. 6 (1985). However, our Supreme Court has recently observed that: "There is merit in having the same rule of law applicable within the borders of our state, whether an interpretation of the Fourth Amendment or its counterpart—Article I, § 17 of the Idaho Constitution—is involved. Such consistency makes sense to the police and the public." *State v. Charpentier*, 131 Idaho 649, 653, 962 P.2d 1033, 1037 (1998). Because we have not been presented with any cogent reason why our state constitution should be applied differently than the Fourth Amendment with respect to the search involved here, we will rely upon judicial interpretation of the Fourth Amendment in rendering our decision.

One recognized exception to the warrant requirement for governmental searches is the protective sweep, which the United States Supreme Court first addressed in *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). In that case, police obtained arrest warrants for Buie and another man, who were suspects in an armed robbery. Six or seven officers went to Buie's house to execute the warrant. One officer shouted into the basement, ordering anyone there to come out. Buie responded and emerged from the basement, at which point he was arrested. Thereafter, an officer entered the basement to determine if anyone else was there, and while in the basement he saw incriminating evidence in plain view.

The United States Supreme Court considered what level of justification was required

for the officer to legally enter the basement, after Buie had been arrested, to determine whether others were present. The Court declined to adopt a probable cause standard, which had been applied by the Maryland Court of Appeals, finding it unnecessarily strict. *Id.* at 337–338, 110 S.Ct. at 1099–1100, 108 L.Ed.2d at 288–289. On the other hand, the Court also rejected the State's request for a bright-line rule allowing protective sweeps as a matter of routine upon in-home arrests for violent crimes. *Id.* at 330, 110 S.Ct. at 1095, 108 L.Ed.2d at 283. Instead, relying on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Court concluded that the "reasonable, articulable suspicion" standard, which lies between the two extremes advocated by the parties, best met constitutional strictures. The Court held that this standard required "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334, 110 S.Ct. at 1098, 108 L.Ed.2d at 286. The Court cautioned that the search must be narrowly confined to a "cursory inspection of those spaces where a person may be found." *Id.* at 335, 110 S.Ct. at 1099, 108 L.Ed.2d at 287. Further, the sweep may last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 335–36, 110 S.Ct. at 1099, 108 L.Ed.2d at 287–88.

 Although *Buie* involved an in-home arrest, courts have applied the doctrine when police are executing a search warrant, so as to allow a protective sweep of areas beyond the boundaries allowed by the warrant. *United States v. Daoust*, 916 F.2d 757 (1st Cir.1990); *State v. Smith*, 141 N.H. 271, 681 A.2d 1215 (1996). *See also U.S. v. Patrick*, 959 F.2d 991 (D.C.Cir.1992) (police could con-

---

**3.** Article I, § 17 states: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall

issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized."

duct protective sweep of bedroom used by defendant where lessee had given consent to search remainder of apartment). In our view, the same officer safety considerations underlying the *Buie* decision apply equally whether the officers are present to effectuate an arrest or to conduct a search. Therefore, we hold that the protective sweep warrant exception applies under Article I, § 17 of the Idaho Constitution when officers are executing a search warrant, provided that the criteria enunciated in *Buie* are met.

In the present case the district court concluded that the *Buie* standards were satisfied and that the officers were properly conducting a protective sweep when they entered the shed. In its memorandum decision, the court made the following factual findings:

> In this case Officers Duggan and Rankin were conducting surveillance on the property up to the time that the warrant was executed. Officer Rankin then went to the property to help secure the main residence while Officer Duggan secured the area around the cargo van. During his surveillance, Officer Rankin saw vehicles coming and going and an individual walking around on the property. The other officers executing the warrant did not immediately see this person when they entered the property to execute the warrant. A reasonably prudent officer executing a search warrant for a potential methamphetamine lab could easily believe that the missing person was hiding in a shed ten (10) feet from property which was to be searched and that the person could pose a serious danger to officers at the scene. This was the belief held by Officer Duggan. This belief was reasonable even though he was not told anyone was in the shed and he did not hear anyone in there. He knew there had been someone walking around the property that was, at that time, unaccounted for. The sheds were a mere ten feet from the van, for which he had a properly executed search warrant. It is not unlikely that someone could have been in there, and the officers were justified in conducting a protective sweep of the area, including the interior of the sheds, to ensure the safety of themselves and others on the scene.

Schaffer contends, and we are constrained to agree, that significant parts of these findings and conclusions are not supported by the evidence in the record. Although Agent Rankin testified that he saw the man later identified as Johnny Schaffer walking near the sheds in the hours before the search, he also testified that he saw this man leave the property in a pickup truck before officers began securing the area. According to Rankin, Johnny Schaffer was the only person he saw in the area during his surveillance, and there is no evidence that he reported Johnny Schaffer's presence to other officers. There was no testimony that any other person was seen on the property during several hours of pre-search surveillance. Thus, there was no "missing person" and no evidence that the officers involved could have reasonably believed that a missing person was hiding in the shed. Indeed, the observations made during surveillance would tend to diminish such concerns. Although Agent Duggan testified that he entered the shed to make a protective sweep, on cross-examination he acknowledged that he had not heard or seen anyone in the shed and had not been told by informants or surveillance personnel to be cautious about the shed because people might be concealed there. He did not claim even a subjective belief or suspicion that Johnny Schaffer or any other individual was concealing himself in the shed.

*Buie, Terry* and related cases establish that the important need of law enforcement personnel to take precautions for the safety of themselves and others at the scene may take precedence over an individual's privacy interest, but the circumstances are narrowly confined to prevent governmental overreaching. The *Buie* opinion emphasizes that a protective sweep is not constitutionally permissible unless the officer held an objectively reasonable suspicion, based upon articulable facts, that the place to be searched harbors an individual who poses a threat to officers at the scene. *Buie*, 494 U.S. at 334, 337, 110 S.Ct. at 1098, 1099, 108 L.Ed.2d at 286, 288. The general desire to be sure that no one is hiding in the place searched is not sufficient to meet this requirement. *See United States v. Ford*, 56 F.3d 265, 270 (D.C.Cir.1995).

Here, nothing in the information that underlay issuance of the initial search warrant, and nothing in the circumstances leading up to and accompanying its execution, provides articulable facts from which it could reasonably be inferred that the shed in question harbored anyone. Consequently, we conclude that the district court erred in holding that the criteria for a protective sweep were met here.

### C. The Warrantless Entry of the Shed Does Not Fall Within the Narrower Precautionary Search Authorized by *Buie*

■ The State urges us to uphold the search of the shed on several alternative bases. First, the State points out that *Buie* authorizes two categories of searches for officer protection. One is the full protective sweep discussed above; the other is a much more confined search which may be conducted without the reasonable suspicion required for a broader protective sweep. Regarding this second category, the Supreme Court stated, "We also hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334, 110 S.Ct. at 1098, 108 L.Ed.2d at 286. The State argues that Agent Duggan's entry of the shed falls within this category of permissible search.

The phrase "immediately adjoining the place of arrest from which an attack could be immediately launched" is not further illuminated in *Buie*, but since this second category of *Buie* search requires no probable cause or reasonable suspicion, it is obvious that the Supreme Court intended it to be much more circumscribed than a full protective sweep. Courts from other jurisdictions have construed it to encompass hallways, closets and rooms adjoining or in close proximity to the room where an arrest was made. *See Ford, supra; United States v. Pixley*, 7 F.Supp.2d 52 (1998); *State v. Roberts*, 957 S.W.2d 449 (Mo.Ct.App.1997). However, we have been referred to no decision where it has been

extended to include an entirely separate structure as the State urges here.

In this case, the subjects of the initial search warrant, and the items the police were thereby authorized to search, were a cargo truck and a bus. The bus was approximately ninety feet from the shed where the incriminating evidence was discovered, and the truck was, at a minimum, ten feet from the shed. Although it is not entirely clear in the testimony, it appears that the entrance to the shed was on the western wall, not directly facing the truck located to the north. Agent Duggan entered the building and walked its full length. Only when he was halfway to the end of the forty-seven foot building did he detect the incriminating smell or see incriminating evidence. We cannot conclude that this was a space "immediately adjoining" the truck or the bus as contemplated in *Buie*. Agent Duggan's search of the building was thus impermissible. The subsequent entry by Agent Lusk was also impermissible as it was based on information obtained by Agent Duggan's unlawful entry.

### D. The Search of the Shed Was Not Within the Scope of the First Warrant

■ The State argues next that even if no exception to the warrant requirement applies, the evidence found in the shed should not be suppressed because the entry of the shed was within the scope of the search authorized by the first warrant. It is the State's contention that because the transit bus served as Schaffer's home, the sheds fell within the "curtilage" of the home and were therefore within the scope of the search warrant.

In support of this proposition, the State refers us to *State v. Sapp*, 110 Idaho 153, 715 P.2d 366 (Ct.App.1986). In *Sapp*, a search warrant authorized the search of "premises" at a particular location. The structures at that address included a house. While checking the yard around the house, officers discovered a hole in the backyard that led to an underground greenhouse where marijuana was growing. Although the officers in that case returned to the magistrate and sought another search warrant before entering the hole and searching the greenhouse, this

Court observed that the second warrant was probably unnecessary. We noted that other jurisdictions have determined that authorization to search "premises" includes the land, buildings and other appurtenances. *Id.* at 156, 715 P.2d at 369. We then concluded that although a greenhouse was not specifically mentioned in the first warrant, a full search of the "premises" would have included a search of the land where the greenhouse was located. We also pointed out that the evidence presented to the magistrate in support of the first warrant had included information about an undetectable greenhouse, and there was no question that a greenhouse was to be a target of the search. *Id.*

The State attempts to place the instant case within the purview of *Sapp* by arguing that because the bus was Schaffer's residence, the shed was an appurtenance within the scope of the search warrant. We are not persuaded. Our comments in *Sapp* focused upon the inclusion of the word "premises" in the warrant's description of the place to be searched and the fact that the greenhouse was a specifically intended target of the first warrant, as revealed by the transcript of the probable cause hearing. In the instant case, by contrast, the search warrant authorized the search of only a truck and a bus located in the backyard of a house. There was no authorization to search any "premises." In fact, the warrant stated that "[t]he affiant is not requesting to search the house, only the cargo truck and transit bus located in the backyard of the house."

The result urged by the State would render meaningless the requirement of Article I, § 17 that a warrant describe *with particularity* the thing to be searched. *See generally State v. Yoder*, 96 Idaho 651, 653, 534 P.2d 771, 773 (1975) (discussing particularity requirement). Accordingly, we reject the State's argument that the officers were entitled to enter the shed under the authority of the first warrant.

**E. Without the Tainted Evidence Obtained from the Warrantless Entry of the Shed, Probable Cause Was Not Shown for Issuance of the Second Search Warrant**

▮ If a warrant has been based in part upon unlawfully acquired evidence, an appellate court must determine whether the remaining information presented to the magistrate, after the tainted evidence is excluded, contains adequate facts from which the magistrate could have concluded that probable cause was shown. *Cada*, 129 Idaho at 228, 923 P.2d at 473.

When Agent Lusk applied for the second search warrant in this case, the magistrate considered not only Lusk's testimony concerning the observations made by Lusk and Duggan inside the shed, but also the testimony given earlier the same day in support of the first warrant. The State contends that even with the tainted evidence stricken, probable cause for the second warrant was shown by the evidence provided in support of the first warrant.

▮ The test for probable cause under Article I, § 17 of the Idaho Constitution mirrors that applied under the Fourth Amendment. It is a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)).

Here, the untainted evidence consisted of information that a methamphetamine laboratory was reportedly located in the cargo truck and that an alleged operator of the lab lived in a nearby converted transit bus. The State has not pointed to any evidence presented to the magistrate that shows a connection between the sheds and the bus or truck. In fact, the evidence was very specifically focused on the vehicles as the exclusive objects of suspicion. We reiterate that the officers disclaimed any desire to search a home that was located on the property, contradicting the State's present contention that any buildings on the property might reasonably have been expected to contain evidence of the suspected drug manufacturing opera-

tion. Nothing about the evidence presented to the magistrate suggests probable cause to suspect that the items sought might be anywhere except in the bus or the truck. We conclude that, absent the tainted evidence from officers' observations in the sheds, probable cause for issuance of the second warrant did not exist.

### III.

### CONCLUSION

Because we do not find validity in any of the State's offered justifications for the warrantless entry of the shed by Agents Duggan and Lusk, we hold that the entries violated Article I, § 17 of the Idaho Constitution.

Without evidence acquired by those entries, there was no probable cause to support the warrant authorizing a further search of the shed. Accordingly, we reverse the district court's order denying Schaffer's motion to suppress evidence found in the shed. The case is remanded to the district court for further proceedings.

Chief Judge PERRY and Judge Pro Tem HORTON concur.