188 P.3d 927

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jimmy Wayne TEAL, Defendant– Appellant.**

No. 32600.

Court of Appeals of Idaho.

June 19, 2008.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Chief Judge.

Jimmy Wayne Teal appeals from his judgment of conviction for possession of a controlled substance. Teal contends the district court erred in denying his motion to suppress evidence. Specifically, he claims that the search warrant issued by the magistrate lacked sufficient particularity in the place to be searched and the things to be seized and was therefore invalid. We affirm.

## I.

### BACKGROUND

Shortly after midnight on December 12, 2004, Rupert City Police Officer Matthew Arthur responded to a call from a tavern in Rupert. He made contact with the bartender. The bartender informed Officer Arthur that she had confronted a man who had his hand inside a poker machine, claiming the machine had taken his money. The man became agitated and left the tavern with a woman. Several patrons of the bar approached the man and woman, who were seated in a car in the parking lot, and convinced the woman not to drive away. The man left the area on foot, while the woman waited for police to arrive. Officer Arthur identified the woman as Sherry Thompson, who identified the man as her cousin, Jimmy Wayne Teal. Inside the car on the floor of the passenger seat was the bill collector which had been removed from the poker machine. There was no money in either the poker machine or the bill collector. Thompson went with Officer Arthur to Teal's apartment in Rupert, where Thompson observed Teal standing in the doorway. Although Officer Arthur knocked on Teal's door, he did not answer. Officer Arthur thereafter applied for and was granted a search warrant which was signed at 3:48 in the morning. The warrant stated:

> **PROOF,** by Affidavit, having been this day laid before me by Matt Arthur of the Rupert City Police Department, showing that the person of Jimmy Teal, evidence of the crime of Burglary and/or Theft, the fruits of a crime, currency or things otherwise criminally possessed; or other things by means of which a crime has been committed or reasonably appears about to be committed, including currency and other items unlawfully possessed are located in the following premises to-wit:
>
> 1015 6th Street, #1, City of Rupert, County of Minidoka, State of Idaho. Residence is apartment number one of a pink brick four-plex. The residence has white trim. The apartment has a wither (sic) door and a glass storm door with a black numeral "1" above the door. The door faces west and is on the northern most end of the complex closest to 6th Street.
>
> **YOU ARE THEREFORE COMMANDED,** at any time of the day or night, to make immediate search of the above-described vehicles for the property described above and to seize the property on the Search Warrant Affidavit filed herein.

The affidavit for search warrant, signed by Officer Arthur, specified that:

he has reason to believe that the person of Jimmy Teal; evidence of the crime of Burglary and/or Theft; the fruits of a crime, or things otherwise criminally possessed; or other things by means of which a crime has been committed or reasonably appears about to be committed including currency and other items unlawfully possessed are located in the following residence to-wit: [description of residence].

The language describing Teal's apartment as set out in the search warrant was taken verbatim from the affidavit.

Before dawn, several officers, including Officer Arthur, executed the search warrant at Teal's apartment. After knocking and announcing their presence, the officers forcefully entered the apartment. Teal was quickly located hiding on the floor between his bed and the wall in his bedroom. Minidoka County Sheriff Deputy Richard Koyle handcuffed Teal and then proceeded to search the bedroom. Underneath the mattress of the bed Deputy Koyle discovered a syringe and a spoon, which he recognized from his training and experience as drug paraphernalia. A second syringe was located above a door frame in the apartment, along with a second spoon, two cigarette butts, and one razor blade. The officers did not locate any currency in the apartment. Subsequent testing of the spoon and syringe found in the bedroom revealed the presence of methamphetamine residue in both pieces of paraphernalia.

Teal was charged with petit theft, I.C. §§ 18–2403(1), 18–2407(2); possession of drug paraphernalia, I.C. § 37–2734A; and possession of a controlled substance, methamphetamine, I.C. § 37–2732(c)(1). Teal moved to suppress the evidence seized from his apartment, alleging that the search warrant lacked probable cause, was vague and over-broad, and that the search exceeded the scope of the warrant. After receiving testimony and special briefing on the issues, the district court denied the motion. Teal entered into an Idaho Criminal Rule 11 plea agreement with the state whereby he pled guilty to one count of possession of a controlled substance, methamphetamine, the state dismissed the remaining two charges,

and Teal reserved his right to appeal from the denial of his motion to suppress. This appeal followed.

## II.

## DISCUSSION

■ Teal contends that the drug paraphernalia and methamphetamine seized from his apartment should be suppressed as fruits of an illegal search. Although the officers possessed a signed search warrant when they entered his apartment, Teal asserts that the warrant did not authorize a search of his residence and lacked sufficient particularity in describing the items to be seized. A valid challenge of this sort normally compels exclusion of all evidence unlawfully seized pursuant to the warrant. *See State v. Bussard*, 114 Idaho 781, 787, 760 P.2d 1197, 1203 (Ct. App.1988). However, none of the items seized were listed on the warrant. Instead, they were seized because they were in plain view inside Teal's apartment during the search. For the plain view exception to the warrant requirement to apply, two conditions must be met; (1) there must be a lawful intrusion or the officer must otherwise properly be in a position to view a particular area, and (2) it must be immediately apparent that items viewed are contraband or evidence of a crime. *State v. Buterbaugh*, 138 Idaho 96, 99, 57 P.3d 807, 810 (Ct.App.2002). Teal does not dispute that the paraphernalia and methamphetamine were immediately recognized as contraband; rather, he challenges the validity of the warrant to support the officers' intrusion into his apartment in the first place. If the warrant failed to authorize a search of the apartment, or lacked sufficient particularity in describing the items to be seized, then the officers were not lawfully in a position to view the contraband, and cannot justify its seizure pursuant to the plain view doctrine.

### A. The Place to be Searched

■ Teal claims that the officers exceeded the scope of the search warrant, because the warrant did not authorize a search of his apartment. The search warrant states,

**YOU ARE THEREFORE COMMANDED,** at any time of the day or night, to make immediate search of the above-described *vehicles* for the property described above and to seize the property on the Search Warrant Affidavit filed herein. (Emphasis added). However, nowhere in the warrant or the affidavit is a vehicle described, and at no point was a vehicle searched pursuant to the warrant. Instead, Teal's apartment was searched. The state asserts that the use of the word vehicle is merely a typographical error, to be ignored because of the obvious intent that the warrant authorize the search of the residence based on the detailed description of the residence found in both the affidavit and the warrant.

A search pursuant to a warrant will exceed the scope authorized if officers seize property not specifically described in the warrant and the seizure doesn't fall within one of the exceptions to the warrant requirement, *State v. Fairchild,* 121 Idaho 960, 967, 829 P.2d 550, 557 (Ct.App.1992), or if officers search a location not specifically described or authorized, *State v. Schaffer,* 133 Idaho 126, 132–33, 982 P.2d 961, 967–68 (Ct.App.1999). The Fourth Amendment to the United States Constitution and Article I, section 17 of the Idaho Constitution prohibit the issuance of a warrant unless it "particularly describe[es] the place to be searched and the person or thing to be seized." The purpose of this guarantee is to safeguard the privacy of citizens by insuring against the search of premises where probable cause is lacking. *State v. Yoder,* 96 Idaho 651, 653, 534 P.2d 771, 773 (1975); *State v. Young,* 136 Idaho 711, 714, 39 P.3d 651, 654 (Ct.App.2002). Teal does not assert that the particularity of the description of his residence was lacking in any manner, but rather that the magistrate did not authorize a search of the residence.

This is a matter of first impression in Idaho. In general, courts should avoid hypertechnicality when interpreting warrants. *State v. Sapp,* 110 Idaho 153, 155, 715 P.2d 366, 368 (Ct.App.1986). Warrants should be viewed in a commonsense and realistic fashion. *State v. Holman,* 109 Idaho 382, 388, 707 P.2d 493, 499 (Ct.App.1985).

The United States Supreme Court has advised that practical accuracy, rather than technical precision, controls the interpretation of warrants. *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 744, 13 L.Ed.2d 684, 688 (1965).

In *Commonwealth v. Burt,* 393 Mass. 703, 473 N.E.2d 683, 693 (1985), the Supreme Judicial Court of Massachusetts upheld the search of a residence, despite the fact that the warrant authorized a search of a vehicle. The warrant commanded officers to:

> make a search of the interior, the glove compartment, the trunk and any other possible area of depository of a certain motor vehicle more particularly described as 8 Village Drive, Walpole Massachusetts, which is a wood framed; cream colored with brown trim 2 story raised single family ranch styled home with 3 access doors in the front side and rear, including an attached garage underneath the structure, owned and occupied by William R. Burt.

*Id.* at 693 n. 2. When applying for the search warrant, the officers apparently used a form that was designed for searches of vehicles, even though they established probable cause before a magistrate to search Burt's residence. *Id.* at 693. The court found that the description of the residence was sufficiently particular for Fourth Amendment and state constitution purposes. *Id.* at 694. Furthermore, the language relating to the motor vehicle was deemed superfluous, and "created little danger of confusion." *Id.* The court concluded that the error in this warrant was a triviality, and that precise language was not to be expected. *Id.*

Similarly, the Texas Court of Appeals upheld the seizure of specific items not commanded in the warrant, but listed in the affidavit, due to the doctrine of incorporation by reference. *Arrick v. State,* 107 S.W.3d 710, 714 (Tex.Ct.App.2003). The warrant stated, "NOW, THEREFORE, you are commanded to enter the suspected place and premises described in said Affidavit and to there search for the person described in said Affidavit and to seize him and bring him before me." *Id.* Contending that the warrant authorized only the seizure of himself, Arrick moved to suppress the evidence seized

from his home. The court concluded that a common-sense reading of the warrant and the affidavit together revealed that the warrant authorized the seizure of the items particularly described in the affidavit, and not just the seizure of Arrick. *Id.* The affidavit provided probable cause to believe that the items sought would be located inside the residence, and it was specifically incorporated by reference into the warrant. *Id.* Therefore the error in the warrant as to the items to be seized was meaningless and the search was valid. *Id.*

The Ninth Circuit also addressed the issue of a technical error in a search warrant, and upheld the validity of the search based on that warrant. In *United States v. Hitchcock,* 286 F.3d 1064, 1067 (9th Cir.2002), *amended by* 298 F.3d 1021 (9th Cir.2002), the issuing magistrate signed the warrant on November 16th, but dated it the 17th. The mistake was not noticed until the executing officer made a return of the warrant that same day, at which point the magistrate corrected the error. *Id.* The court analyzed whether the search exceeded the scope of the warrant based on an "objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search." *Id.* at 1071. However, the "subjective state of mind of the officer executing the warrant is not material" to the inquiry. *Id.* Based on the sequence of events on the 16th, the date on the warrant was clearly an inadvertent mistake; there was no evidence that the magistrate intended to delay the search by one day. *Id.* at 1072. Similar to a search warrant, in *United States v. Benavides,* 854 F.2d 701, 702 (5th Cir.1988), an arrest warrant was declared valid despite the fact that Benavides's name was left out of the command portion of the warrant. Although an arrest warrant is required to "truly name the person charged or describe him sufficiently to identify him," a technical error will not automatically invalidate the warrant. *Id.* Therefore, the fact that Benavides's name was clearly placed on the warrant in the caption left "no doubt that it directed the officers to arrest Benavides." *Id.*

Here, Officer Arthur applied for a search warrant after being summoned to the tavern during the early morning hours. Officer Arthur's affidavit presented sufficient evidence to give rise to a belief that evidence of the theft from the poker machine would be located either on Teal himself, or inside his apartment. Both the affidavit and the search warrant list the address of Teal's apartment and describe its appearance and location. The only mention of a car refers to Thompson's vehicle. The bill collector was located inside the car where Teal had presumably been sitting, and there was no money inside it. There is no indication that Teal owned a vehicle, that he had been in a vehicle since abandoning Thompson's car in the parking lot at the tavern, or that there were any vehicles at his apartment when Thompson and Officer Arthur first arrived. Furthermore, Officer Arthur's affidavit requested a warrant to search Teal's apartment and made no references to a car other than Thompson's. Commanding a search of an unknown vehicle contradicts the rest of the warrant. If there had been a blank space instead of the word vehicle, the court's finding of probable cause would be no clearer. The use of the word vehicle instead of residence was obviously a technical error. Consequently, we conclude that the officers did not exceed the scope of the warrant by searching Teal's known apartment instead of an unknown vehicle.

### B. Particularity of the Items to be Seized

■ Teal also contends that the search warrant was invalid because it was overbroad and it did not describe the items to be seized with sufficient particularity. Therefore, he argues that the officers executed a general warrant, which is void, and they were not lawfully in his apartment when they observed the methamphetamine and paraphernalia. The issue of whether a warrant is overbroad or lacks sufficient particularity is a legal question subject to *de novo* review on appeal. *State v. Weimer,* 133 Idaho 442, 449, 988 P.2d 216, 223 (Ct.App.1999); *see also United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir.1986).

The Fourth Amendment requires particularity sufficient to prevent the seizure of one thing under a warrant describing another and to prevent the exercise of discretion by the officer executing the warrant. *Holman,* 109 Idaho at 388, 707 P.2d at 499. The particularity requirement's objective is that those searches deemed necessary based on a probable cause determination by a magistrate should be as limited as possible. *See State v. Caldero,* 109 Idaho 80, 84, 705 P.2d 85, 89 (Ct.App.1985). A search warrant must be particular enough so that "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231, 237 (1927). However, this statement is not to be read literally. *Weimer,* 133 Idaho at 449, 988 P.2d at 223; 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.6(a), at 605 (4th ed.2004). Instead, the "warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *United States v. Cook,* 657 F.2d 730, 733 (5th Cir. 1981); *see also United States v. Betancourt,* 734 F.2d 750, 754 (11th Cir.1984). The specific evil that the particularity requirement guards against "is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Weimer,* 133 Idaho at 449, 988 P.2d at 223. A warrant accomplishes this objective by requiring a particular description of the things to be seized. *Id.*

The search warrant authorized officers to search for and seize:

> the person of Jimmy Teal, evidence of the crime of Burglary and/or Theft, the fruits of a crime, currency or things otherwise criminally possessed; or other things by means of which a crime has been committed or reasonably appears about to be committed, including currency and other items unlawfully possessed.

This listing of "things" unlawfully or criminally possessed that may be evidence of a crime is taken from I.C. 19–4402(1),[1] which provides:

> A search warrant may be issued to search for and seize:
>
> 1. Any property or intangible that constitutes evidence of a criminal offense.
> 2. Contraband, the fruits of crime, or things otherwise criminally possessed.
> 3. Weapons or other things by means of which a crime has been committed or reasonably appears about to be committed.
> 4. A person named in an arrest warrant.

The state concedes that there are only two items listed in the search warrant that are described with any particularity, and are in fact the only two items the officers were looking for: Teal himself and currency. Teal asserts that the word "currency," was not sufficiently particular and at a minimum, the warrant needed to specify that the officers were searching for United States currency. *See, e.g., United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir.1976) (declaring that "U.S. currency" is a generic class of items but used by itself is not fatally vague); *State v. Fitanides,* 131 N.H. 298, 552 A.2d 1379, 1381 (1988) (validating description of "U.S. Currency" because the currency could not have been described with greater specificity). "The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved. Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible." *Spilotro,* 800 F.2d at 963; *see also; United States v. Harris,* 903 F.2d 770, 775 (10th Cir.1990); *Cook,* 657 F.2d at 733; *United States v. Porter,* 831 F.2d 760, 764 (8th Cir.1987); *Namen v. State,* 665 P.2d 557, 561 (Alaska Ct.App.1983). In order to determine if a description is sufficiently particular, the court looks to:

---

1. Idaho Criminal Rule 41(b) similarly states:
   A warrant may be issued under this rule to search for and seize (1) evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) weapons or other

things by means of which a crime has been committed or reasonably appears about to be committed, or (4) a person named in an arrest warrant issued pursuant to Rule 4 of these rules.

(1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Spilotro*, 800 F.2d at 963 (citations omitted).

The first two factors develop under the same analysis based on the facts of this case. Currency is not contraband; it is frequently possessed by people for legitimate reasons. When faced with a crime of theft where the property stolen is currency, it may be difficult for officers to distinguish between the currency stolen and the currency lawfully possessed prior to the theft. This is not a situation in which officers knew the exact amount and denomination of bills taken, or the serial numbers, and could limit their search accordingly. Rather, this case is similar to *State v. Fitanides*, 131 N.H. 298, 552 A.2d 1379, in which officers obtained a warrant to search for and seize "fireworks, smoke bombs, and slot machines." The appellant in that case was the manager at a second-hand store which regularly sold items of this sort. Only some of the fireworks and slot machines were sold contrary to state law. The only manner of distinguishing between the items held lawfully and those held unlawfully was their manner of sale. Therefore the officers possessed probable cause to seize all of the fireworks, smoke bombs and slot machines, and there was no conceivable way for the items to be distinguished during the search. *Id.* at 1380. In this case, Officer Arthur did not have details about the type of currency taken, the amount of currency taken, or the amount and type of currency that Teal already had in his possession lawfully. Therefore there was probable cause to seize all currency found, and there was no way for officers to distinguish between currency that was lawfully or unlawfully possessed. The use of the word currency, by itself, satisfies the first two factors from *Spilotro*.

The third factor, whether the government could have described the currency with more detail based on the information available at the time Officer Arthur applied for the search warrant, is not in the record before us. Officer Arthur's affidavit does not indicate whether the poker machine accepted cash, coins, or both. It also is silent on whether Thompson observed Teal taking money out of the bill collector, and if so if she could identify the type of currency. Furthermore, there is no description as to the denomination of bills that could be used in the poker machine. Any of this information may have helped narrow the scope of the search warrant, and was most likely available from Thompson or the bartender. An attendant consideration, however, is the time frame within which Officer Arthur was working. When he first made contact with Thompson, Teal had already fled, presumably with the currency. Teal did not answer his door when Officer Arthur knocked at the apartment. Officer Arthur was concerned that the currency would be hidden or destroyed if he did not obtain a search warrant quickly. When a delay to obtain further descriptive information is impractical, it will not be required. *See, State v. Rose*, 748 A.2d 1283, 1285 (R.I.2000). Furthermore, when a theft has taken place, it may not be possible to obtain a more detailed description of the property stolen. *Porter*, 831 F.2d at 764 (finding description of "currency" and "United States postage stock" to be sufficient where postal employees knew that money and stamps were taken, but did not know how much was stolen or in what form); *Rose*, 748 A.2d at 1285 (finding description of "evidence of breaking and entering of dwellings, and possession of stolen goods, to include, but not limited to, jewelry, coins, collectors' items, electronic equipment, etc." to be sufficiently particular). *Bussard*, 114 Idaho at 787, 760 P.2d at 1203 (holding that description of "miscellaneous gold and silver jewelry" was not sufficiently particular, but that "three jars of assorted U.S. coins .... approximately $900 in U.S. currency ($20s and $100s)" was sufficiently particular). Officer Arthur may have been able to describe the currency with more particularity. However, the law does not require the level of particularity argued for by Teal. That would not comport with a common-sense, realistic

interpretation of warrants. Despite Teal's assertions to the contrary, "currency" was a sufficiently particular description in these circumstances.

## III.

## CONCLUSION

The search warrant authorized a search of Teal's residence, and provided a sufficiently particular description of an item to be seized; therefore the officers were lawfully inside his apartment when they discovered methamphetamine and paraphernalia in plain view. The district court did not err in denying Teal's motion to suppress evidence. The judgment of conviction is affirmed.

Judge PERRY and Judge LANSING concur.

