**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37171**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Unpublished Opinion No. 713 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 18, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MANDY L. EMERY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Gooding County. Hon. John K. Butler, District Judge; Hon. Casey Robinson, Magistrate.

Decision of the district court affirming magistrate's order denying motion to suppress evidence, affirmed.

Capitol Law Group, PLLC, Gooding, for appellant. David A. Heida argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

_____

GUTIERREZ, Judge

Mandy L. Emery appeals from the district court's intermediate appellate decision affirming the magistrate's order denying Emery's motion to suppress evidence. For the reasons set forth below, we affirm.

## I.

## BACKGROUND

On January 9, 2009, police received an anonymous phone call from a male caller in which he informed police that Emery and her husband were selling drugs from the house they had just moved into, that Emery carries a glass methamphetamine pipe in her purse and normally has drugs in her possession, and that he has been in the residence and has seen marijuana and methamphetamine. Based on this information and the fact that he was aware that new occupants had just moved into that residence and that Emery had been previously investigated for

1

manufacturing controlled substances, Officer Christen McRoberts and other officers conducted two garbage searches outside of the residence, noted in Officer McRoberts' affidavit as occurring on January 20, 2008, and on January 27, 2009.

After the garbage searches uncovered evidence of illegal substances, Officer McRoberts presented an affidavit to the magistrate with attached pictures of the residence located at 365 4th Avenue East in Wendell, Idaho. On January 29, 2009, the magistrate issued a search warrant based on the information contained in the affidavit. However, the affidavit referred to the date of the first garbage search as January 20, 2008, and the date the affidavit was sworn as April 8, 2008. A search of Emery's residence was conducted and as a result she was charged with three misdemeanor counts: one of possession of marijuana, and the other two of possession of drug paraphernalia. Emery moved to suppress the evidence seized from her residence pursuant to the search warrant arguing that the warrant was invalid. The magistrate denied Emery's motion, and she entered a conditional guilty plea to one count of possession of marijuana. Emery appealed, and the district court affirmed the magistrate's denial of her motion to suppress. Emery now appeals the district court's intermediate appellate decision.

## II.

## STANDARD OF REVIEW

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.*

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## DISCUSSION

Emery asserts that the district court erred in denying her motion to suppress because the affidavit failed to establish probable cause, the search warrant was overbroad, and the Idaho Constitution provides greater privacy in garbage searches than the United States Constitution.

**A.    Probable Cause**

Emery asserts that the district court erred in denying her motion to suppress because the affidavit failed to establish the probable cause necessary to support the issuance of a search warrant.  When probable cause to issue a search warrant is challenged on appeal, the reviewing court's function is to ensure that the magistrate had a substantial basis for concluding that probable cause existed.  *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *State v. Josephson*, 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983).  In this evaluation, great deference is paid to the magistrate's determination.  *Gates*, 462 U.S. at 236; *State v. Wilson*, 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct. App. 1997).  The test for reviewing the magistrate's action is whether he or she abused his or her discretion in finding that probable cause existed.  *State v. Holman*, 109 Idaho 382, 387, 707 P.2d 493, 498 (Ct. App. 1985).  When a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show that the search was invalid.  *State v. Kelly*, 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct. App. 1984).  In order for a search warrant to be valid, it must be supported by probable cause to believe that evidence or fruits of a crime may be found in a particular place.  *Josephson*, 123 Idaho at 792-93, 852 P.2d at 1389-90.  When determining whether probable cause exists:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238; *see also Wilson*, 130 Idaho at 215, 938 P.2d at 1253.

Emery argues that there was no corroboration of the information provided by the January 9, 2009, anonymous caller, there was no identifying information to connect the garbage can or the contents inside of it to the residence, the affidavit created a factual impossibility based

3

on the dates of the various events set forth in it, and the information contained in the affidavit was stale.

Emery contends that there was no corroboration of the information provided by the anonymous caller. Here, the anonymous caller informed police that Emery was selling drugs from the house she just moved into, that she carried a glass methamphetamine pipe in her purse and usually had drugs in her possession, and that he had been in Emery's residence and had seen marijuana and methamphetamine. The statement that the anonymous caller indicated that he had been in Emery's residence provided some basis for his knowledge. Nevertheless, an anonymous tip alone cannot supply the requisite basis for reasonable suspicion, *State v. Hankey*, 134 Idaho 844, 848, 11 P.3d 40, 44 (2000), let alone for probable cause which is a more demanding standard than reasonable suspicion both in terms of quantity and content of information, as well as in reliability thereof, *Alabama v. White*, 496 U.S. 325, 329-32 (1990). However, an anonymous tip may contribute to the necessary probable cause as part of the "totality of the circumstances" test, which may include the officer's own corroboration of significant details of the tip. *Josephson*, 123 Idaho at 792-93, 852 P.2d at 1389-99. By itself the reliance upon the anonymous call here was not enough to establish probable cause. Therefore, we must examine the affidavit in its entirety, including Officer McRoberts' knowledge about the occupants of the residence and the garbage searches, to determine if there were enough facts to establish probable cause.

In the affidavit, Officer McRoberts stated he had personal knowledge that Emery had recently moved into the residence with her husband coinciding with the previous owner having just passed away. He stated that the police had investigated Emery in the past for the manufacturing of a controlled substance. Officer McRoberts further stated that he responded to a dog complaint at the residence on January 12, 2009, and made contact with a female who he recognized from previous contacts as Janell Kelley, who was also Emery's roommate.

According to the affidavit, Officer McRoberts and two other officers conducted the first garbage search on "January 20, 2008." The garbage search uncovered evidence of marijuana, an Idaho Donor Document of Gift with Emery's name with a different address on it, a citation issued to Janell Kelley by the Jerome County Sheriff's Office, a plastic baggie with one corner torn off, and a small ziplock-style plastic jewelry baggie that contained a white powder residue.

4

Relying on *Josephson*, Emery argues that a yearlong timeframe between two garbage searches renders the information in the affidavit stale. She also argues that the date on the affidavit, April 8, 2008, created a factual impossibility because Officer McRoberts could not have averred to facts which were to occur almost nine months into the future. The state counters that these were typographical errors. Although the affidavit states that it was sworn on April 8, 2008, and that the first garbage search occurred on January 20, 2008, the magistrate was aware that these dates were typographical errors at the time he authorized the warrant because he was the magistrate who notarized the warrant application, and all of the events occurred in 2009. For instance, there was evidence that the suspects had just recently moved into the residence, so they would not have been residents in January 2008. The magistrate was also aware that the January 20, 2008, garbage search uncovered a uniform citation issued to Janell Kelley, an occupant of the residence. Finally, the magistrate specifically addressed the date of the first garbage search and determined that when reading the affidavit in its entirety, it was clear that the date was January 20, 2009. Therefore, Emery's reliance on *Josephson* is unfounded because unlike in that case, the magistrate here was aware of the typographical errors when he issued the search warrant. Consequently, the errors in the affidavit did not show the information to be stale. *See State v. Cheatham*, 134 Idaho 565, 574, 6 P.3d 815, 824 (2000) (holding that sufficient probable cause existed to support the issuance of the search warrant and that the information in the affidavit was not stale even though the affidavit contained typographical date errors).

Officer McRoberts and another officer conducted a second garbage search on January 27, 2009, which uncovered more evidence of marijuana, a beer can with burnt residue in it that appeared to be used as some sort of smoking device, and a vehicle registration form for Janell Kelley. Emery argues that nothing other than physical proximity connected the garbage can to the residence because there were no markings on it, no one observed an occupant of the residence place it in the alley, and none of the documents found inside the garbage can listed the address of the residence. Nevertheless, between the two garbage searches, there was sufficient identifying information to connect the garbage can as well as the contents inside of it to the residence.

Based on the totality of the circumstances set forth in the affidavit, including information from the anonymous call, the officer's personal knowledge, and the two garbage searches, the magistrate was correct to conclude that there was a fair probability that contraband or evidence

5

of a crime would be found in Emery's residence.  Therefore, the information in the affidavit was sufficient to establish probable cause for the issuance of the search warrant.

**B.      Validity of Search Warrant**

Emery asserts that the search warrant was overbroad and failed to describe the items to be seized with sufficient particularity.  The issue of whether a warrant is overbroad or lacks sufficient particularity is a legal question subject to *de novo* review on appeal.  *State v. Teal*, 145 Idaho 985, 990, 188 P.3d 927, 932 (Ct. App. 2008); *State v. Weimer*, 133 Idaho 442, 449, 988 P.2d 216, 223 (Ct. App. 1999).

The Fourth Amendment requires particularity sufficient to prevent the seizure of one thing under a warrant describing another to prevent the exercise of discretion by the officer executing the warrant.  *State v. Holman*, 109 Idaho 382, 388, 707 P.2d 493, 499 (Ct. App. 1985).  The particularity requirement's objective is that those searches deemed necessary based on a probable cause determination by a magistrate should be as limited as possible.  *See State v. Caldero*, 109 Idaho 80, 84, 705 P.2d 85, 89 (Ct. App. 1985).  A search warrant must be particular enough so that "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant."  *Marron v. United States*, 275 U.S. 192, 196 (1927).  However, this statement is not to be read literally.  *Weimer*, 133 Idaho at 449, 988 P.2d at 223; 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.6(a), at 605 (4th ed. 2004).  Instead, the "warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981); *see also United States v. Betancourt*, 734 F.2d 750, 754-55 (11th Cir. 1984).  The specific evil that the particularity requirement guards against "is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings."  *Weimer*, 133 Idaho at 449, 988 P.2d at 223.  A warrant accomplishes this objective by requiring a particular description of the things to be seized.  *Id.*

Here, the search warrant authorized officers to search for and seize:

> . . . property consisting of marijuana, methamphetamine, and/or other controlled substances, drug trafficking and/or manufacturing paraphernalia along with any implements, and/or paraphernalia used in the sale, manufacture and/or use of marijuana, methamphetamine and/or controlled substances, including, but not limited to grow lights, scales, ziplock baggies, paper bindles, photographs, sifters, ledger books or other sheets memorializing the sale of any controlled substances, equipment used in the manufacture of controlled substances and/or, all apparent

6

instrumentalities or items evidencing the same, firearms, U.S. currency or other valuables easily liquidated for cash in such amounts of [sic] situated or packaged in such a way as to make it apparent that such are proceeds of trafficking and/or manufacture of controlled substances, packaging materials, records, utility receipts, envelopes, letters, keys and other indicia or control and/or ownership of said residence . . . .

Emery argues that the search warrant was a "general warrant" in violation of the Fourth Amendment, and was so overbroad and vague that the officers were left with unfettered discretion to search and seize nearly anything they thought may have some evidentiary value. However, the search warrant here did not authorize the officers to generally rummage through Emery's possessions with no direction. The warrant authorized the officers to search for evidence related to the possession, sale, or manufacture of marijuana, methamphetamine, and any other controlled substances, and even contained a non-exhaustive list of items. The warrant enabled the officers to reasonably identify the items authorized to be seized, and therefore described the items with sufficient particularity. Accordingly, the warrant was not overbroad.

Emery also argues that the warrant sought items as to which there was no probable cause such as paraphernalia, evidence of trafficking, and methamphetamine and other controlled substances. Emery further argues that even if there were probable cause to search the residence, the affidavit only establishes that marijuana may be searched for, if anything at all. When a warrant is partially overbroad, only the property unlawfully seized is subject to suppression. *State v. Bussard*, 114 Idaho 781, 787, 760 P.2d 1197, 1203 (Ct. App. 1988). Therefore, even if we were to find that the warrant was partially overbroad as to the items Emery argues, the denial of the motion to suppress would be harmless because the evidence of marijuana would not have been suppressed.

## C.     Expectation of Privacy

Emery asserts that the Idaho Constitution provides greater search and seizure protection of garbage than the United States Constitution. In support of her argument, Emery asserts because some of the other states surrounding Idaho have found a greater degree of privacy in garbage searches under their state constitutions than the United States Constitution provides, this

Court should also find that the Idaho Constitution does the same.[1]  However, this issue has previously been addressed by the Idaho Supreme Court.  In *State v. Donato*, 135 Idaho 469, 470-74, 20 P.3d 5, 6-10 (2001), the Idaho Supreme Court concluded that the holding in *California v. Greenwood*, 486 U.S. 35, 41 (1988), that the Fourth Amendment of the United States Constitution does not afford an expectation of privacy in garbage that is left out for collection "in an area accessible to the public," is consistent with its interpretation of the Idaho Constitution. As we do not have the authority to overrule a decision by the Idaho Supreme Court, we need not address this argument any further.

## IV.

## CONCLUSION

Emery has failed to show that the district court erred in denying her motion to suppress. The affidavit was sufficient to establish probable cause for the issuance of the search warrant, and the search warrant was not overbroad.  Moreover, the Idaho Constitution does not provide greater protection of the expectation of privacy in garbage than does the United States Constitution.  Accordingly, we affirm.

Chief Judge LANSING and Judge GRATTON, CONCUR.

---

[1] Emery cites several cases in which courts have found that their state constitutions provide greater search and seizure protection of garbage than the United States Constitution.  *See Litchfield v. State*, 824 N.E.2d 356, 363-64 (Ind. 2005); *State v. Granville*, 142 P.3d 933, 944 (N.M. Ct. App. 2006); *State v. Howard*, 129 P.3d 792, 802 (Or. Ct. App. 2006); *State v. Galloway*, 109 P.3d 383, 389 (Or. Ct. App. 2005); *State v. Sweeney*, 107 P.3d 110, 112-13 (Wash. Ct. App. 2005).