**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 51454**

| | |
|---|---|
| **STATE OF IDAHO,** | ) |
| **Plaintiff-Respondent,** | ) **Filed: January 7, 2026** ) |
| **v.** | ) **Melanie Gagnepain, Clerk** ) |
| **NICKOLAS D. JACOBSON,** | ) ) |
| **Defendant-Appellant.** | ) ) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Jay P. Gaskill, District Judge. Hon. Michelle M. Evans, District Judge.

Judgment of conviction for trafficking in methamphetamine, affirmed; order denying motion to suppress, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Amy J. Lavin, Deputy Attorney General, Boise, for respondent.

HUSKEY, Judge

Nikolas D. Jacobson appeals from his judgment of conviction following a guilty verdict for trafficking in methamphetamine. Jacobson argues the district court erred in admitting GoPro video footage of Jacobson inside his basement because the video was beyond the scope of the warrant authorizing the search of the GoPro camera. Jacobson also argues the district court erred in permitting the State's fingerprint expert to testify via Zoom pursuant to Idaho Criminal Rule 43.2 because the State did not timely disclose the request for video testimony and admitting such testimony was a violation of Jacobson's right to confront witnesses provided by the Sixth Amendment to the United States Constitution. We hold the district court did not err in admitting the GoPro video footage because the video was not beyond the scope of the warrant authorizing the search of the GoPro camera. We also hold the district court did not err in permitting the fingerprint expert to testify via Zoom because in adopting I.C.R. 43.2, the Idaho Supreme Court concluded that in narrow circumstances, permitting testimony by video teleconference does not violate the Sixth Amendment.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Officers executed a search warrant on September 25, 2018, on a house located in Lewiston, Idaho. Officers were told Jacobson lived in the basement of the house. During the search of the basement, the officers found drug paraphernalia and a safe containing two bags of methamphetamine and a GoPro video camera. The officers obtained a search warrant for the GoPro video camera and Jacobson's cell phone, seeking evidence that Jacobson lived in the basement during the time surrounding the September 25 search; the warrant authorized a search for information stored on the devices between September 1, 2018, and October 1, 2018. The GoPro camera contained one video of Jacobson in the basement; the timestamp on the video read "December 31, 2011."

When viewing the video, Officer Dammon noticed a discrepancy between the timestamp on the video and the contents of the video, which portrayed the basement in an identical manner as the basement appeared during the initial September 25 search. Officer Dammon also noticed that items portrayed in the video were in the identical location as when the initial search was conducted. Officer Dammon created a test video with the GoPro on October 30, 2019, and the resulting video was timestamped as January 8, 2012. Given the erroneous timestamp on the test video, along with the identical portrayal of the basement and its contents in the video of Jacobson and on the day of the initial search, Officer Dammon believed the video of Jacobson was taken around the time of the initial search.

Jacobson was charged with one count of trafficking in methamphetamine, 400 grams or more, Idaho Code § 37-2732B(a)(4)(C). Jacobson filed a motion to suppress the GoPro video on the grounds that the video was timestamped December 31, 2011, at 11:15 p.m.,[1] which was outside the scope of dates authorized by the warrant. Following a hearing, the district court denied Jacobson's motion. The district court agreed that if it relied solely on the timestamp, the timestamp fell outside the scope of the warrant. However, the district court concluded Jacobson's argument that the timestamp on the video fell outside the scope of the warrant was not "compelling" because Officer Dammon testified that the timestamp on the video was likely incorrect and items in the

---

[1] It is not clear from the record whether the timestamp on the video was December 31, 2011, January 1, 2012, or January 7, 2012. Nonetheless, the precise date of the video is not important except as Jacobson alleges it fell outside the dates authorized in the warrant.

basement, specifically, those on a white shelf, were the same and in the same location in the video as what Officer Dammon observed during the execution of the initial search warrant.

Fourteen days prior to trial, the State filed a motion to permit its fingerprint expert, Hailey Youngling, to testify via Zoom because Youngling lived in Tennessee at the time of trial and had another trial for which she had been subpoenaed that took priority over Jacobson's trial. Jacobson objected based on the timeliness of the motion, arguing I.C.R. 43.2 requires notice twenty-eight days before the proceeding, and the expert testimony via Zoom denied Jacobson his Sixth Amendment right to confront witnesses. Following a hearing, the district court granted the State's motion and allowed Youngling to testify via Zoom.

A jury found Jacobson guilty of trafficking in methamphetamine. Jacobson appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

This Court exercises free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found. *State v. Hooper*, 145 Idaho 139, 142, 176 P.3d 911, 914 (2007). Whether admission of evidence violates a defendant's right to confront adverse witnesses under the Sixth Amendment's Confrontation Clause is a question of law over which this Court exercises free review. *Id.*

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently

with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

### III.

### ANALYSIS

Jacobson raises two issues on appeal. First, Jacobson argues the district court erred in denying his motion to suppress the GoPro video because the timestamp date was outside the dates authorized by the search warrant. Second, Jacobson argues the district court violated his Sixth Amendment right to confront witnesses when it allowed Youngling, to testify via Zoom despite the untimely notice. The State argues the district court did not err in denying the motion to suppress because the timestamp on the video was incorrect and as a result of the incorrect timestamp, the district court properly considered other evidence, including Officer Dammon's testimony, to conclude the GoPro video fell within the authorized dates on the warrant. The State also argues Jacobson's constitutional argument is not preserved, but even if preserved, Johnson has failed to show a constitutional violation that is clear on the record or that the district court abused its discretion under I.C.R. 43.2, which authorized Youngling to testify via Zoom.

### A. The GoPro Video

The Fourth Amendment to the United States Constitution prohibits the issuance of a warrant unless it particularly describes the place to be searched and the person or things to be seized. The purpose of this guarantee is to safeguard the privacy of citizens by insuring against the search of premises where probable cause is lacking. *State v. Yoder*, 96 Idaho 651, 653, 534 P.2d 771, 773 (1975); *State v. Young*, 136 Idaho 711, 714, 39 P.3d 651, 654 (Ct. App. 2002). Thus, the description of places to be searched enumerated in a search warrant is to be construed to prevent the search of areas that the magistrate court did not specifically find probable cause to search. *State v. Gosch*, 157 Idaho 803, 807, 339 P.3d 1207, 1211 (Ct. App. 2014). Practical accuracy, rather than technical precision, controls whether a search warrant adequately describes the place to be searched. *State v. Teal*, 145 Idaho 985, 989, 188 P.3d 927, 931 (Ct. App. 2008). A search pursuant to a warrant will exceed the scope of the warrant if officers search a location not specifically described or authorized. *See State v. Schaffer*, 133 Idaho 126, 132-33, 982 P.2d 961, 967-68 (Ct. App. 1999). In determining whether a search was confined to its lawful scope, the court considers both the purpose disclosed in the application for a warrant's issuance and the manner of its execution. *VonderAhe v. Howland*, 508 F.2d 364, 369-70 (9th Cir. 1975).

4

Jacobson does not challenge the district court's factual finding that the video timestamp was erroneous. Instead, Jacobson "challenges the district court's conclusion that the wrongness of the timestamp could be disregarded in favor of a finding that the officers' search was within the scope of the warrant." We disagree.

The district court concluded the timestamp on the video was erroneous. In the absence of a timestamp indicating when the video was taken, the district court looked to the other evidence to determine the likely time frame in which the video was taken. The district court found that because other items were in the same location in the video as they were during the execution of the initial search warrant on September 25, the video was likely taken close in time to that search, and thus, fell within the scope of the warrant authorizing the search of the GoPro camera. Based on these findings, the district court denied Jacobson's motion to suppress.

In reaching its conclusion, the district court considered all the evidence presented in Jacobson's motion and the testimony and evidence presented during the suppression hearing. First, the affidavit in support of the search warrant for the GoPro video (attached to Jacobson's motion to suppress) indicated the purpose of the search warrant was to "assist with determining where Jacobson was living and whom the controlled substances belonged to." The district court noted that admitting the video "would serve the purpose of establishing that [the address] was the true address of Jacobson, thereby indicating that the drugs found during the execution of the first search warrant belonged to Jacobson." Whether Jacobson was living in the basement was at issue because at the time of the initial search, officers had information from the resident who lived in the upstairs of the home that Jacobson lived in the basement. When executing the first search warrant, the officers found "a large amount of male clothing, televisions, food, etc.," and "several pieces of indicia in the name of Nickolas Jacobson." However, after Jacobson was charged, his attorney told law enforcement that Jacobson was not living at the residence at the time and provided some receipts that showed Jacobson stayed in a local hotel "for a few days."

Next, the district court considered the testimony presented at the suppression hearing. At that hearing, Officer Dammon testified he seized the GoPro camera on September 25, 2018, and it remained in police custody. Officer Dammon testified "it was obvious" to him that the video was taken "recently as the majority of the things in the apartment were in the same place as when we executed the search warrant. And specific items were in the same place on a shelving unit, like a pop can and a red Solo cup and paraphernalia." Additionally, "prescription drugs and those types of things were in the same location" as when the initial warrant was executed. And for

5

clarification, Officer Dammon testified that items "were located in the exact same spot" as they were when the initial search was conducted.

On cross-examination, Officer Dammon agreed he could not provide an exact date or time the video was taken, only that it was taken "recently," meaning close in time to when the initial warrant was executed. Officer Dammon's opinion was based on his observations of the room, the content of the video depicting items in the exact same location, and his knowledge that Jacobson had been living at the address for only a short period of time. Officer Dammon also testified he did not know whether the drugs were in the safe at the time the video was taken. Officer Dammon was the only witness to testify, and the only evidence presented was a copy of the GoPro video. The district court's factual findings indicate that it found Officer Dammon's testimony credible and based its decision to deny Jacobson's motion to suppress on some of Officer Dammon's testimony.

The district court also considered the arguments of the parties. Jacobson argued that because the only proof before the district court was the timestamp on the video and that timestamp was outside the dates authorized by the warrant, the video had to be suppressed. The State argued the timestamp was incorrect, and the district court should rely on the observations of Officer Dammon to establish the video was taken "close in time" to the search and fell within the authorized dates on the warrant. The district court rejected Jacobson's argument. Because the district court found the timestamp was erroneous, it considered other evidence to determine whether the video fell within the scope of the warrant. In that regard, Officer Dammon's knowledge of the appearance of the basement and the location of certain items at the time of the initial search and the video depicting those same items in the identical location was relevant to establish that the video was taken close in time to the execution of the search warrant and likely fell within the authorized dates of the warrant. *State v. Schaffer*, 112 Idaho 1024, 1028, 739 P.2d 323, 327 (1987). The district court did not err in considering other evidence to determine when the GoPro video was taken.

Jacobson argues that even if the GoPro video was erroneously timestamped, there was insufficient evidence for the district court to conclude the video was taken between September 1, 2018, and October 1, 2018. We disagree.

The district court properly considered the purpose of the warrant and the manner of its execution. *See VonderAhe*, 508 F.2d at 369-70. The purpose of the warrant was to establish whether Jacobson lived in the basement at the time of the initial search on September 25, 2018.

6

The affidavit attached to the search warrant indicated that during the month of August 2018, detectives surveilled Jacobson and found he was living at the residence. The only evidence indicating the video was taken outside of the warrant was the timestamp, which the district court found was not an accurate date. The other facts available to the district court indicating when the video was filmed, as discussed above, supported a finding that the video was made close in time to the issuance of the search warrant, and thus, fell within the scope of the search warrant. Because Jacobson does not challenge the district court's factual findings, including that the video was made close in time to the dates on the warrant authorizing the search, Jacobson has failed to establish a violation of his Fourth Amendment rights and, as a result, the district court did not err in denying Jacobson's motion to suppress.

## B.     The Zoom Testimony

On appeal, Jacobson asserts the district court abused its discretion in admitting the testimony of Hailey Youngling, the State's forensic fingerprint expert, via Zoom pursuant to I.C.R. 43.2 because the State's notice was untimely. Jacobson also argues the district court violated his Sixth Amendment right to confrontation when it admitted the testimony of Youngling via Zoom. The State argues that Jacobson's Sixth Amendment challenge is not preserved and, alternatively, the district court did not err.

The State filed a motion to permit Youngling to testify remotely. Youngling worked for the Idaho State Police Laboratory but lived in Tennessee at the time of the trial. The State indicated it filed the motion as soon as it became aware that Youngling was in Tennessee. The State also explained that Youngling was scheduled to testify in a different criminal matter during the same time as the trial setting in Jacobson's case and that trial would take priority over Jacobson's trial. At the hearing on the motion, Jacobson objected on both timeliness and a violation of his Sixth Amendment right to confront witnesses.

We first address the State's argument that Jacobson failed to preserve his Sixth Amendment confrontation clause argument. We disagree. Jacobson objected to the State's motion to allow Youngling to testify via Zoom. At the hearing on the motion, when asked by the district court if he was objecting because of "timeliness or the fact that it's a video teleconference," Jacobson responded, "both." While Jacobson conceded he did not have caselaw at the ready to support his argument at the hearing and he would "abide by the timeliness" argument, we do not read that to be a withdrawal or abandonment of the confrontation argument. Jacobson renewed the same

7

objection during the trial. Given that, we conclude Jacobson has preserved his Confrontation Clause argument.

Nonetheless, Jacobson's argument fails. The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Maryland v. Craig*, 497 U.S. 836, 844 (1990). While the Clause provides two guarantees to criminal defendants, only the first is at issue here, which is the right physically to face those who testify against him. *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988). However, *Craig* recognized that a "face-to-face confrontation with witnesses appearing at trial" is not an "indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers." *Craig*, 497 U.S. at 849-850. Instead, the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial, which must occasionally give way to considerations of public policy and necessities of the case. *Id.* at 849. Accordingly, under the *Craig* balancing test, a defendant's "right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850; *State v. Clapp*, 170 Idaho 314, 323, 510 P.3d 675, 676 (2022). "Both requirements must be met." *Clapp*, 170 Idaho at 323, 510 P.3d at 676.

Idaho Criminal Rule 43.2 reflects the Idaho Supreme Court's balancing of criminal defendants' right to confront accusatory witnesses and the important public policies of cost savings for Idaho taxpayers and more efficient resolution of criminal cases. At the time the rule was proposed to and adopted by the Idaho Supreme Court, the reason for the rule was explained:

> The rule was prompted by the fact that the state experts who analyze blood, breath, and urine are located in Coeur d'Alene or Pocatello. Allowing forensic testimony by video teleconference will not only help alleviate the travel costs associated with forensic testimony, but will also allow those laboratories to operate more efficiently as it will cut back on time the forensic scientists are traveling or waiting in a courtroom and thus help with the turnaround time in test results. This is a benefit to both the state and defendants.

Catherine Derden, *Highlights of the 2011 Rule Amendments*, 54 The Advocate, no. 6/7, 2011, at 40, 42.

By adopting I.C.R. 43.2, the Supreme Court concluded that the costs to the taxpayers and the efficient resolution of criminal cases were sufficiently important to dispense with the

8

requirement of physical face-to-face confrontation in certain circumstances as permitted by *Craig*. The Idaho Supreme Court has inherent and exclusive authority to make rules governing practice and procedure in Idaho's state courts. *See* I.C. § 1-212; *see also State v. Samuel*, 165 Idaho 746, 756, 452 P.3d 768, 778 (2019). Because only the Idaho Supreme Court has the authority to create the rules, only the Supreme Court can amend or abrogate those rules. This Court declines to hold that a rule promulgated and adopted by the Idaho Supreme Court fails to meet constitutional requirements.

The Supreme Court also listed certain requirements in I.C.R. 43.2 that would ensure the reliability of the testimony. Pursuant to I.C.R. 43.2(a), the district court has discretion to allow forensic testimony via video teleconference so long as the following conditions are met:

> (1) The court and the forensic scientist must be able to see and hear each other simultaneously and communicate with each other during the proceeding.
> (2) The defendant, counsel from both sides, and the forensic scientist must be able to see and hear each other simultaneously and communicate with each other during the proceeding.
> (3) A defendant who is represented by counsel must be able to consult privately with defense counsel during the proceeding.

There is not any reasonable dispute that Youngling's testimony is exactly the sort of "forensic testimony" to which I.C.R. 43.2 is intended to apply. Nonetheless, Jacobson argues the district court failed to reach its decision by an exercise of reason because the district court granted the motion after a finding of hardship to the State. Jacobson's entire argument on this issue is as follows:

> Despite implicitly finding the disclosure was untimely, the court granted the motion after a finding of hardship to the State. In doing so, the district court failed to exercise reason. The district court failed to consider all relevant circumstances of the case, including the nature and importance of forensic testimony, the preference for face-to-face confrontation, the proponent's reason for video teleconference testimony, the proponent's compliance with the rules governing such testimony, and potential for prejudicial effect, or confusion of the issues, and the reliability of the video teleconference. The district court did not weigh all the facts here; it viewed its decision through the narrow lens of hardship.

This argument, however, appears to focus on the district court's decision to admit the testimony, generally, not on the timeliness of the notice, specifically. As to the procedural safeguards, the district court recognized it had discretion and appropriately exercised that discretion.

First, nothing about the plain language of I.C.R. 43.2 requires the district court to consider the above factors. The district court considered all the arguments of the parties, including the State's reason for admitting the video teleconference testimony and the safeguards in the rule. The

district court noted that by using Zoom many of the requirements of I.C.R. 43.2 were met. For example, the district court noted that by using Zoom the witness would be visible to the court, Jacobson, counsel, the jury, and others present in the courtroom. Although Jacobson complains the district court did not consider certain circumstances, the district court did not err when it considered only the arguments presented. Notably, and as to the timeliness of the State's disclosure, Jacobson failed to make any argument regarding the prejudice he would suffer because of the untimely notice. In the absence of any argument regarding prejudice, and considering the arguments presented, we cannot say the district court failed to reach its decision by an exercise of reason.

But even if the district court's exercise of discretion required it to address those factors, nothing in the text of I.C.R. 43.2 provides there must be some other more pressing reason than cost or convenience to introduce forensic testimony via video teleconferencing. First, the importance of the evidence is clear: to tie Jacobson to the nearly one and one-half pounds of methamphetamine found in the safe in the basement where he lived. Second, while Jacobson lists factors such as a preference for face-to-face confrontation and the potential for prejudice, those factors were necessarily considered and addressed by the Supreme Court when it adopted the rule. The Court concluded that those factors, when weighed against the competing important policy issues, could be dispensed with, in the narrow circumstance prescribed by I.C.R. 43.2. Thus, there was no reason for the district court to reassess those factors. Third, the district court did consider some of the factors raised by Jacobson. For example, the district court considered the reason the State sought permission to introduce the remote testimony, the compliance with the rule, and the reliability of the video teleconferencing system. The district court noted that the State sought to admit Youngling's testimony via Zoom because Youngling lived in Tennessee and had another trial for which she had to testify, which would take priority over Jacobson's trial. The district court also noted that the State did not comply with the timeliness requirement. However, in the district court, Jacobson failed to make any argument regarding any prejudice he suffered as a result of the late disclosure and makes no such argument on appeal. In the absence of any prejudice, the timing of the State's notice has little, if any, significance.

The district court appropriately exercised its discretion pursuant to I.C.R. 43.2 and thus, did not violate Jacobson's Sixth Amendment right when it complied with the requirements of I.C.R. 43.2 and permitted Youngling to testify via Zoom. Because the district court did not err in admitting the testimony, we need not address whether any purported error was harmless.

10

**IV.**

**CONCLUSION**

The district court did not err in admitting the GoPro video because it did not err in concluding the video fell within the parameters of the warrant. The district court did not abuse its discretion in admitting the testimony of the forensic expert via Zoom because it did not violate Jacobson's Sixth Amendment right to confrontation and Jacobson did not establish any prejudice related to the timing of the disclosure. Jacobson's judgment of conviction is affirmed.

Chief Judge TRIBE and Judge LORELLO, **CONCUR**.